DAHLEM *v.* HACKLEY UNION NATIONAL
BANK & TRUST COMPANY.

1. NEGLIGENCE—OFFICE BUILDING REST ROOM—FLOOR LEVELS—SELF-CLOSING DOOR.
    The negligence of defendant office building owner in maintaining women's rest room with a floor level some 6 inches higher than that of corridor and with access gained through a heavy, self-closing door which opened out into the corridor *held*, a question for the jury.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Negligence §§ 102, 134, 136.
    Liability of proprietor of store, office, or similar business premises for injury from fall on one-step change in floor level.   65 ALR2d 471.
[2] 38 Am Jur, Negligence § 348.
[3] 3 Am Jur, Appeal and Error § 1003.
[4] 38 Am Jur, Negligence § 371.
[5] 38 Am Jur, Negligence § 351.

2. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE—OFFICE BUILDING REST ROOM—FLOOR LEVELS—SELF-CLOSING DOOR.

Whether defendant sustained its burden of proof on issue of contributory negligence of plaintiff, a 75-year-old lady with impaired vision in 1 eye, whose hip was fractured when she fell into women's rest room in defendant's office building, *held,* a matter for jury under evidence showing she was unfamiliar with the situation, had unlocked the door with key procured from her physician's employee, and tripped on the step to higher level immediately inside the door and was pushed to the floor by the self-closing door.

3. APPEAL AND ERROR—NEW TRIAL—PREJUDICIAL ERROR.

The error which calls for a new jury trial is one of such significance as to have prejudiced the result, one without which the Supreme Court can say that the result might well have been different.

4. NEGLIGENCE—OFFICE BUILDING REST ROOM—INSTRUCTIONS—SELF-CLOSING DOOR.

Instruction in action by patient of physician whose office was located in defendant's office building that included statement "she was propelled inward by the door, thereby causing her to fall" was not without evidentiary support, where plaintiff had testified that she had unlocked the heavy door, opened it sufficiently to enter the rest room, caught her foot on the 6-inch step up to the higher floor level, and was pushed in as the door closed behind her and locked itself.

5. DAMAGES — SUBSEQUENT HOSPITALIZATION — NERVOUSNESS — PROXIMATE CAUSE.

Question as to whether a second hospitalization of plaintiff some 8 months following fracture of hip as she fell while entering rest room in defendant's office building *held,* to have been properly considered by jury in determining damages under instructions that her extremely nervous condition which had necessitated the second hospitalization was due to the injury rather than her concern about a settlement in the case.

Appeal from Muskegon; Fox (Noel P.), J. Submitted October 5, 1960. (Docket No. 21, Calendar No. 48,687.) Decided December 1, 1960.

Case by Lucy C. Dahlem against Hackley Union National Bank & Trust Company for injuries resulting from fall in rest room of office building. Verdict

and judgment for plaintiff.   Defendant appeals.
Affirmed.

*Poppen, Street & Sorensen (Harold M. Street,* of
counsel), for plaintiff.

*Alexander, Cholette, Buchanan, Perkins & Conklin
(Edward D. Wells,* of counsel), for defendant.

Carr, J.   On September 13, 1957, plaintiff sus-
tained injuries, including a fractured hip, as a result
of a fall in an office building owned and operated by
defendant in the city of Muskegon.   It is undisputed
that plaintiff was lawfully in said building, having
gone there for the purpose of consulting a physician
who was a tenant of the defendant.   Desiring to use
the facilities of the women's rest room in the build-
ing, plaintiff was furnished a key thereto by an em-
ployee of the physician in whose office she was wait-
ing at the time, and was informed as to the location
of said room, the entrance to which was gained
through a door which swung out into the hallway.
It appears that said door was equipped with a spring
which caused it to close after having been opened.
In close proximity to the door, approximately 2-3/4
inches therefrom, within the rest room, was a step
5 or 6 inches high between the level of the corridor
and that of the rest room facilities.

At the time in question plaintiff was of the age
of 75 years.   She was possessed of normal vision in
one eye, with limited vision in the other.   In accord-
ance with the directions given to her she opened the
door to the rest room and entered, sustaining in so
doing the fall resulting in the injuries for which she
brought the present action to recover damages.   Her
calls for assistance were heard, her plight discovered,
and she was duly hospitalized and treated.

It was the claim of the plaintiff as set forth in her declaration, and in proofs introduced in her behalf on the trial, that the said rest room and particularly the entrance thereto was not maintained by defendant in a reasonably safe condition for use by persons lawfully upon said premises, that the raised floor of the rest room was so close to the door as to constitute a dangerous condition, that attention thereto was not called by warning signs nor by contrasting colors, and that the door, because of the spring causing it to close when opened, presented an additional hazard. Defendant by answer denied that plaintiff's injuries resulted from negligence on its part, and affirmatively pleaded that plaintiff was guilty of contributory negligence in failing to make proper observations and otherwise to use ordinary care for her own safety. At the conclusion of plaintiff's proofs on the trial counsel for defendant moved for a directed verdict, which motion was renewed at the conclusion of the testimony and denied. The jury returned a verdict in plaintiff's favor in the sum of $10,028.73. A motion for a new trial was submitted and denied. Defendant has appealed asserting that the trial judge was in error in refusing to grant the motions for a directed verdict in its favor, and that there was prejudicial error in submitting the issues in the case to the jury.

As a witness in her own behalf plaintiff testified on the trial as to the reason why she was in defendant's office building on the day in question, and with reference to her attempt to enter the rest room. Her version as to how the accident occurred is indicated in the following excerpt from her testimony:

"*Q.* Have you gone back to the bank since, within the past few days, to refresh your memory concerning it?

"*A.* I never saw it, you know.

"*Q.* Well, you saw this door, didn't you?

"*A.* I saw that door.

"*Q.* Well, will you tell the jury what happened when you proceeded to the rest room on the fourth floor of the Hackley Bank?

"*A.* I opened the door as she said—it's kind of a heavy door.

"*Q.* How did you open the door?

"*A.* Well, it swings out.

"*Q.* Did you have to use a key first?

"*A.* Yes, I put in the key and turned it with my right hand and pulled the door open and walked in. I never got in.

"*Q.* What happened?

"*A.* Well, something happened, I went in head first and the door closed behind me, it felt to me somebody was pushing it, I don't know, I screamed and screamed when I struck that floor.

"*Q.* As you proceeded into the rest room, what happened?

"*A.* Well, I didn't proceed in.

"*Q.* Did you start in?

"*A.* Well, I started, and that step, I caught my foot, there's a 6-inch step there, I found that out when I went up and looked at it—

"*Q.* You found it out later?

"*A.* Yes, I found it out.

"*Q.* But what happened to your foot as you proceeded into the rest room on September 13th?

"*A.* I don't know. When the girls picked me up, I must have been knocked unconscious, Mr. Sorensen, because when the girls picked me up I still had the idea of going to the toilet.

"*Q.* I want to go back with you, if you will, to the point where you are entering the rest room. What about the door? Did you say you opened the door with a key with your right hand and you pulled the door open with your left?

"*A.* Well, it's a pretty heavy door, I just pulled it open enough to go in.

"*Q.* Enough to get in?

"*A.* I started all right, but don't you have to walk into a place? I went in head first.

"*Q.* Why did you go in head first?

"*A.* Because something caught my foot.

"*Q.* Something caught your foot?

"*A.* Yes.

"*Q.* Did anything happen behind you at all?

"*A.* The door—the door slammed behind me, that slammed as I was falling and I thought that I was caught in there.

"*Q.* So, you say something caught your foot and you went into the rest room, the door slamming behind you, is that correct?

"*A.* That's right. * * *

"*Mr. Sorensen:* As you started to walk into the rest room, were you watching where you were going?

"*A.* Well, of course I was watching. How do you suppose I got to be 75 years old without watching where I was going?

"*Q.* It's important that we get to this day, Mrs. Dahlem. As you started to walk into the rest room, were you watching?

"*A.* Of course, I was watching.

"*Q.* Did you look ahead of you?

"*A.* I always look ahead of me, I don't have to look down, I can see.

"*Q.* As you proceeded into the rest room, did you see that step?

"*A.* No, I didn't see any step. If I had, I wouldn't have fallen.

"*Q.* And you say that you fell to the floor in the rest room?

"*A.* Yes."

On behalf of defendant testimony was offered on the trial indicating, as it is claimed, that the rest room and the entrance thereto were constructed and maintained in a reasonable manner, not inconsistent with ordinary methods of constructing and caring for facilities of like nature. It is insisted that the

5- or 6-inch step between the level of the floor of the corridor and that of the rest room did not result in the existence of an inherently dangerous condition, and that the failure to post a warning notice directing attention to the difference in level was not negligence. On behalf of plaintiff it is argued that the combination of physical features resulted in a situation dangerous to one not familiar with the premises, and that because of the different tenants to whom offices in the building were rented, including particularly physicians, defendant was charged with notice that persons not possessing normal physical capacity in all respects would have occasion to use the premises.

Plaintiff's testimony indicates that she was not previously familiar with the situation with which she was confronted on the day in question, that the door was somewhat heavy, that she pulled it open enough to enter the rest room, that as she did so the door closed behind her, that it felt to her as though somebody was pushing it, that something caught her foot, and that she fell. It is undisputed that the door automatically locked behind her, a witness for defendant testifying to the fact that she unlocked it after hearing plaintiff scream.

Counsel for appellant have cited *Garrett* v. *W. S. Butterfield Theatres, Inc.*, 261 Mich 262. In denying recovery there to the plaintiff who fell on a step in a rest room, it was said:

"Different floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons. The construction is not negligent unless, by its character, location, or surrounding conditions, a reasonably prudent person would not be likely to expect a step or see it."

Assuming that the difference in level between the corridor floor and the rest room floor is not in and of itself evidence of negligence, it is apparent that in the instant case we are concerned with certain other factors relating to the matter at issue. Particularly involved is the construction of the door which plaintiff's testimony would indicate was of such weight that she opened it merely to a width that permitted her to enter. If, as she claimed, she felt that someone was pressing against the door and against her as she undertook to enter the rest room, no explanation is available other than that the spring which was designed to close the door was operating with sufficient force to push it against her. We have in this respect a condition that she could scarcely be expected to anticipate. There was nothing to warn her that the door automatically closed. The extent to which the operation of the door entered into the accident was a matter for consideration by the trier of the facts. The same observation may be made with reference to the effect of the proximity of the step to the door when closed. Applying the rule suggested in the *Garrett Case, supra,* we think it must be said that there were conditions here present that required submitting to the jury the issue as to defendant's negligence.

Was plaintiff guilty of contributory negligence as a matter of law? Her testimony, above quoted in part, indicates what she did and, likewise, what she failed to discover as she undertook to enter the rest room. Under the situation presented by this record whether defendant sustained the burden of showing that her conduct was such as to constitute contributory negligence was a matter for the jury. *Torma* v. *Montgomery Ward & Company,* 336 Mich 468, and prior decisions there cited.

*Jones* v. *Michigan Racing Association,* 346 Mich 648, cited by counsel for appellant, is distinguishable

on the facts. There the plaintiff, seeking to recover damages for personal injuries sustained by him on defendant's premises, saw the situation by which he was confronted, recognized or should have recognized the danger in proceeding, and apparently proceeded in disregard of his own safety. Such is not the situation in the case at bar and the trial judge was not in error in leaving to the jury the question as to plaintiff's alleged contributory negligence.

In charging the jury the trial judge stated the claims of the respective parties with reference to the matters in dispute. Considered in its entirety we think that it was a full and fair presentation of the principles by which the jury was bound in arriving at its verdict. We find no reversible error and conclude from the entire record that the trial was fairly conducted. As said in *Rouse* v. *Gross,* 357 Mich 475, 481:

"Reversal for new trial does not follow automatically from a showing of error in the course of a generally fair trial. There probably never was, and never will be, a perfectly conducted jury trial. The error which calls for a new jury trial is one of such significance as to have prejudiced the result. *Miskiewicz* v. *Smolenski,* 249 Mich 63; *Sheehan* v. *Dalrymple,* 19 Mich 239. It must be one without which we can say that the result might well have been different."

Appellant insists that the court erred in stating to the jury that:

"The plaintiff asserts that as she sought to enter the rest room, her foot caught on the step and she was propelled inward by the door, thereby causing her to fall, injuring herself and suffering the damages for which she complains."

Counsel claim that there was no evidence that the closing of the door caused plaintiff to fall. However,

the testimony of plaintiff, above quoted, indicates that her person was subjected to some pressure as she was about to enter the rest room, and it is a matter of fair inference from undisputed proofs that such pressure could have come only from the door in the process of its being closed by the spring. The jury was entitled to consider plaintiff's testimony in this respect, and it may not be said that the charge as given was confusing or materially objectionable.

As before indicated, plaintiff was hospitalized, because of her broken hip, on September 13, 1957. She was discharged November 17th following. On May 15, 1958, her physician caused her to be sent to the hospital again because of extreme nervous agitation on her part. She was released on June 2d thereafter. It was a matter of dispute on the trial as to the precise connection between the later condition to which plaintiff was subjected and the accident resulting in the hip fracture. Under the charge to the jury, if it found the state of agitation and nervous condition to be the proximate result of plaintiff's injury, and if negligence on the part of defendant was determined to be the proximate cause of such injury, the subsequent condition may have been considered in awarding compensation to plaintiff. The jury was further charged that if the subsequent condition in question resulted only from her concern about a settlement in the case then damages could not be awarded therefor. Under the proofs we think the question was one for determination by the jury and that no error was committed in submitting it accordingly.

Other questions raised do not require specific mention. As indicated, we find that the case was fairly tried and that under the testimony offered by the parties the factual issues were for determination by

the jury. Our attention is called to no reversible error, and the judgment is affirmed.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.