# Order

**Michigan Supreme Court**
**Lansing, Michigan**

March 20, 2020

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

159491

SUSAN BLACKWELL,
          Plaintiff-Appellee,

v

DEAN FRANCHI and DEBRA FRANCHI,
          Defendants-Appellants.
_____/

SC: 159491
COA: 328929
Oakland CC: 2014-141562-NI

On order of the Court, the application for leave to appeal the March 14, 2019 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

MCCORMACK, C.J. (*concurring*).

I concur in the majority's decision to deny leave because I am not persuaded the Court of Appeals' opinion merits further review.

The plaintiff was a guest at a holiday party hosted by the defendants in their home when she entered an unlit room and was injured from falling down an eight-inch step. We asked the Court of Appeals to consider whether the defendants had a duty to warn the plaintiff about the step. *Blackwell v Franchi*, 502 Mich 918 (2018). The majority concluded there was a general duty to warn the plaintiff of a dangerous condition on their property and that whether the defendants breached that duty by failing to warn about an eight-inch step down in a dark room was a question for the jury to decide. *Blackwell v Franchi (On Remand)*, 327 Mich App 354, 357 (2019).

Our common law and the Restatement of Torts support the panel's unremarkable holding as to duty. As property owners, the defendants' duty to licensees is well settled: they have a duty to warn of conditions on their property that involve an unreasonable risk of harm to such licensees when they should expect that their licensees will not discover or realize the danger. *Preston v Sleziak*, 383 Mich 442, 453 (1970), citing Restatement Torts, 2d, § 342, overruled in part on other grounds by *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591 (2000).

The Court of Appeals majority used the analytic framework of general and specific standard of care rather than duty and breach. It held that "defendants had a general duty to plaintiff as a licensee and that whether defendants violated that duty by their specific actions or omissions is a question for the fact-finder." *Id*. at 357. This framework comes from our doctrine. In *Moning v Alfono*, 400 Mich 425 (1977), we said,

While the court decides questions of duty, general standard of care and proximate cause, the jury decides whether there is cause in fact and the specific standard of care: whether defendants' conduct in the particular case is below the general standard of care, including—unless the court is of the opinion that all reasonable persons would agree or there is an overriding legislatively or judicially declared public policy—whether in the particular case the risk of harm created by the defendants' conduct is or is not reasonable. [*Moning*, 400 Mich at 438 (citation omitted).]

*Moning* defined "general standard of care" as "reasonable conduct 'in light of the apparent risk,' " differentiating it from duty, which it defined as a "legal obligation." *Moning*, 400 Mich at 438. Modern negligence doctrine (including our own) more commonly uses the term "duty" to refer to the general standard of care. See, e.g., *Riddle v McLouth Steel Prods Corp*, 440 Mich 85, 96 (1992) (explaining that "[o]nce a defendant's legal duty is established, the reasonableness of the defendant's conduct under that standard is generally a question for the jury"). And *Moning*'s reference to the "specific standard of care," or whether the defendants' specific conduct met the "general standard of care," is more commonly referred to as "breach." *Moning*, 400 Mich at 438, 443.[1]

The Court of Appeals majority held that the defendants had a general duty to warn and that the specific standard of care (or whether the defendants' actions fell below the general standard of care) should be determined by a jury. *Blackwell (On Remand)*, 327 Mich App at 358, citing *Case v Consumers Power Co*, 463 Mich 1, 7 (2000). In other words, the defendants owed a duty to warn the plaintiff about a dangerous condition on the property that they could expect she would not discover. Whether the defendants' failure to warn of this particular condition was a breach of that duty, the panel also held, was a question of fact. This was not clear error.

Whether the specific hazard here—an eight-inch step into a dark room—qualifies as the kind of danger that should come with a warning is question about which reasonable people could disagree. The dissent thinks this Court should decide that it is not a danger that needs to come with a warning as a matter of law, citing *Garrett v W S Butterfield Theatres*, 261 Mich 262 (1933) and *Bertrand v Alan Ford, Inc*, 449 Mich 606 (1995), for support. In other words, the dissent believes a court should decide this particular

---

[1] The Court of Appeals majority also cited Restatement Torts, 2d, § 342, p 210, to hold that the defendants had a general duty of care to the plaintiff. *Blackwell (On Remand)*, 327 Mich App at 357. The concurrence explained why that was correct, concluding that "Restatement Torts, 2d, § 342 controls the duty analysis in this case and defines the duty's parameters." *Id*. at 364 (GLEICHER, J., concurring); see also *id*. at 362-363 (citing *Preston*, 383 Mich at 453; *Stitt*, 462 Mich 591; and *MacDonald v PKT, Inc*, 464 Mich 322, 335 (2001)).

question of breach as a matter of law. But neither case the dissent cites supports its view that the fact-bound question *here* can be decided as a matter of law.

*Garrett* was an ordinary negligence case, and it was not decided on a motion for summary disposition—instead, it was reversed after a jury verdict. *Garrett*, 261 Mich at 264. And the hazards have very little in common—in *Garrett*, the step was four and a half inches (not eight) and the room the plaintiff stepped into was brightly lit. *Id.* at 263.[2]

*Bertrand* consolidated two cases after separate trial courts granted summary disposition for defendants finding no genuine issues of material fact after plaintiffs alleged injuries caused by falling down steps. *Bertrand*, 449 Mich at 609. In one, a plaintiff fell down the second of two six- or seven-inch outdoor steps around noon, which she alleged was only dangerous because she " 'just did not see it.' " *Id.* at 619. The plaintiff thus did not present any facts supporting that the step posed an unreasonable risk of harm, and this Court held that her claim was therefore properly dismissed by a judge because no jury could have found otherwise. In the other, this Court held there was a genuine issue of material fact because the step—which was clearly marked with yellow paint across its entire top corner—may have created an unreasonable risk of harm because of its placement near a vending machine and because of the way a nearby door hinged. *Id.* at 624. In other words, we decided that the question of whether the failure to warn of this particular step's danger was a question for the fact-finder. *Id.* at 624-625.

The unique facts in each of those cases (the premises cases and the ordinary negligence cases) and their holdings support the Court of Appeals' holding here. The plaintiff was injured when she entered a dark room and fell because she was surprised by an eight-inch step down. The plaintiff thus pled facts showing a more unique danger than an ordinary step encountered not in the dark. Whether the defendants should have warned her about it—whether they breached their duty—is a question for the fact-finder.

The Court of Appeals applied settled law to facts to determine that while there is a duty to warn a licensee of unreasonable dangers that are not discoverable upon casual inspection, there is a question of fact whether the defendants' failure to warn the plaintiff about this particular hazard breached that duty. There is nothing incorrect or remarkable about that holding.

VIVIANO, J., joins the statement of MCCORMACK, C.J.

---

[2] Different facts result in different outcomes. Compare this case with another ordinary negligence step case, *Dahlem v Hackley Union Nat'l Bank & Trust Co*, 361 Mich 609 (1960), in which this Court upheld a jury verdict in favor of a plaintiff who fell down a five- or six-inch step in a restroom. There, a heavy door with a spring that made the door close quickly apparently made the step dangerous enough to need a warning.

MARKMAN, J. (*dissenting*).

I respectfully dissent.  Plaintiff attended an informal Christmas party hosted by defendants at their home.  When plaintiff arrived, she was directed by one of the defendants to place her purse in a small room adjoining the garage, commonly known as a "mudroom."  Notwithstanding that the room was dark, and that there was a light switch immediately adjacent to the entranceway, plaintiff proceeded into the room without turning on the light or otherwise seeking to ascertain whether it was safe to enter.  Plaintiff lost her balance and fell when she set foot into the room, which was about eight inches lower than the adjoining hallway.

Plaintiff sued defendants for her injuries on the basis of premises liability, arguing that defendants breached their duty to "warn, advise and instruct persons regarding potentially dangerous conditions on the premises."  Defendants moved for summary disposition, which the trial court granted on the grounds that "reasonable minds could not differ that the alleged condition here [the step] was open and obvious.  Moreover, there are no special aspects."  Plaintiff appealed, and the Court of Appeals, in a split decision, reversed and remanded to the trial court for further proceedings, stating that "[t]he determination of whether defendants had a duty to warn plaintiff of the drop-off depends on how the conflicting testimony regarding whether the drop-off was open and obvious is resolved." *Blackwell v Franchi*, 318 Mich App 573, 579 (2017).  Thereafter, defendants sought leave to appeal in this Court and we directed the scheduling of oral argument on whether to grant the application, instructing the parties to address "whether the appellants owed a duty to warn the appellee of the condition on the land at issue . . . ." *Blackwell v Franchi*, 501 Mich 903 (2017).  Ultimately, however, a majority of the Court declined to resolve this issue, deciding instead to remand to the Court of Appeals for consideration of the same issue, specifically, "whether defendants owed plaintiff a duty to warn about the step because the plaintiff did not know or have reason to know of the condition and the risk involved, and it involved an unreasonable risk of harm . . . ." *Blackwell v Franchi*, 502 Mich 918, 920 (2018) (quotation marks and citations omitted).  On remand, and again in a split decision, the same panel reversed and remanded to the trial court for further proceedings. *Blackwell v Franchi* (*On Remand*), 327 Mich App 354 (2019).  The court majority asserted that

> a reasonable person could conclude that the specific standard of care in this case included giving a warning to plaintiff and other licensees that upon entering the mudroom they would encounter an eight-inch drop-off that was not visible.  Put in the terms of the remand order [from the Supreme Court], reasonable persons could disagree on whether the alleged condition, i.e., the nonvisible change in floor level, presented an unreasonable risk of harm . . . . [*Id*. at 360-361.]

For the following reasons, I believe the Court of Appeals clearly erred in imposing a legal duty upon defendants.

First, the Court of Appeals, in a conclusory fashion, determined that a duty existed on defendant's part, but it failed entirely to *analyze* the basis for this duty, as this Court directed it to do. Subsequently, the court assessed the *standard of care* that accompanied this asserted duty. Yet, duty and standard of care are considerably distinct concepts. *Moning v Alfono*, 400 Mich 425, 436-437 (1977) ("While we all agree that the duty question is solely for the court to decide, the specific standard of care is not part of that question."). The issue of legal duty "comprehends whether the defendant is under any obligation [in the first place] to the plaintiff to avoid negligent conduct; it does not include—where there *is* [such] an obligation—the *nature* of the obligation: the general standard of care and the specific standard of care." *Id.* at 437 (emphasis altered). Thus, while Chief Justice MCCORMACK is correct that our "negligence doctrine . . . commonly uses the term 'duty' to refer to the general standard of care," *ante* at 2, that is only true to the extent that the overall *nature* of the duty, *if one indeed exists*, is defined by the general standard of care. That is, a court must *first* determine whether a duty exists, and only *if* the court finds that it does must it then determine the overall nature of that duty, i.e., the general standard of care. And *Moning* is not the only case to recognize the unremarkable proposition that "duty" and "general standard of care" are distinct legal questions. See, e.g., *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 500 (1988) ("[T]he court decides the *questions* of duty and the general standard of care, and the jury determines what constitutes reasonable care under the circumstances.") (emphasis added); *Ray v Swager*, 501 Mich 52, 63 n 13 (2017), quoting *Moning*, 400 Mich at 437 (" 'The elements of an action for negligence are (i) duty, (ii) general standard of care, (iii) specific standard of care, (iv) cause in fact, (v) legal or proximate cause, and (vi) damage.' "); *Case v Consumers Power Co*, 463 Mich 1, 6-7 (2000). Here, in determining that the "specific standard of care . . . included giving a warning to plaintiff," *Blackwell (On Remand)*, 327 Mich App at 360-361, the Court of Appeals focused upon "the nature of [defendant's] obligation," *Moning*, 400 Mich at 437, which is a function of the standard of care. At the same time, it neglected to focus upon the threshold inquiry-- whether defendants were "under *any* obligation [in the first place] to the plaintiff to avoid negligent conduct," *id.*, which is a function of defendant's legal duty.

Second, for reasons more fully explained in my dissent when this case was earlier considered by the Court, see *Blackwell*, 502 Mich at 924 (MARKMAN, C.J., dissenting), the Court of Appeals here misapplied our common law by imposing a legal duty upon defendants. "[L]andowners are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land." *Hoffner v Lanctoe*, 492 Mich 450, 459 (2012). And in *Preston v Sleziak*, 383 Mich 442, 453 (1970), overruled in part on other grounds by *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591 (2000), this Court adopted § 342 of the Second Restatement of Torts, which

sets forth in particular the legal obligations of a social host (a "licensor") to a social guest (a "licensee"):

> A possessor of land [licensor] is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved.
>
> * * *
>
> The possessor is entitled to expect that the licensee . . . will be on the alert to discover conditions which involve risk to him. Indeed, it is not necessary that the condition be such as the licensee would discover by the use of his senses while upon the land. [2 Restatement Torts, 2d, § 342, pp 210, 212 comment *f*.]

Accordingly, the host is entitled to expect that their guests will be aware of their surroundings and be able to recognize the existence of possible conditions that are not themselves immediately visible. Specifically relevant to this case, "[d]ifferent floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons." *Garrett v W S Butterfield Theatres, Inc*, 261 Mich 262, 263 (1933). See also *Bertrand v Alan Ford, Inc*, 449 Mich 606, 614 (1995) ("[S]teps and differing floor levels [are] not ordinarily actionable *unless* unique circumstances surrounding the area in issue made the situation unreasonably dangerous.").

Here, by allowing plaintiff to proceed to trial on the apparent assumption that she could not have anticipated and would not have been alerted to the possibility of a differing floor level in entering a darkened room from the adjoining hallway, the Court of Appeals turns our common law on its head. Both *common* sense, and the *common* law, provide that the *common*place circumstances that obtained here do not give rise to liability on the part of a social host for injuries suffered by a guest where the guest has failed both to anticipate such circumstances and, as in the instant case, to ascertain the "lay of the land" by turning on the lights. See also *Brusseau v Selmo*, 286 Mich 171, 174 (1938) ("In the case at bar, plaintiff had notice of the darkened hallway. He could have

had more light either by turning on the 'switch' or leaving the entrance door wide open, or by both. His failure to make use of appliances that would have lighted the stairway precludes his recovery.").

Third, bearing in mind that "the common law is but the accumulated expressions of the various judicial tribunals in their efforts to ascertain what is right and just between individuals in respect to private disputes," *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 242 (2013) (quotation marks and citations omitted), the Court of Appeals' decision is troubling in how it views the relationship between hosts and guests, veering away from legal rules that have long, and correctly, reflected, I believe, the "actual social customs and practices" of the people, *Woodman v Kera LLC*, 486 Mich 228, 277 (2010) (opinion by MARKMAN, J.). If this Court disfavors these rules, they should be changed straightforwardly so that the people need not guess what new rules are to prevail. By not doing so, the certain effect of decisions such as today's will be to incentivize litigation as our law becomes increasingly confused and unsettled. In accordance with the Court of Appeals opinion, hosts can no longer operate upon the assumption that guests will not walk blindly into a darkened room without having exercised even a modicum of caution. Must guests now be personally escorted throughout the home? Must warning signs be installed apprising guests that they are encouraged to avail themselves of the benefits of electric lighting? And, of course, darkened rooms and unexpected steps and flooring levels are hardly the end to new lawsuits lying in wait. On what principled grounds should a host expect a guest to act with greater judgment in a wide realm of similarly looming household mishaps-- sink and shower faucets configured to dispense hot water; ovens and stoves that heat up; throw rugs that are unstable; chairs capable of tipping over? In place of a clear, settled, and workable common-law rule-- one premised upon the principle that social guests must exercise personal responsibility in navigating commonplace residential "risks" and "hazards"-- what is the new rule that will supplant this?

It is true that " '[t]he common-law does not consist of definite rules which are absolute, fixed, and immutable like the statute law, but . . . is a flexible body of principles . . . .' " *Price*, 493 Mich at 243, quoting *Beech Grove Investment Co v Civil Rights Comm*, 380 Mich 405, 429 (1968). Nonetheless, the common law *is* composed of a set of longstanding and settled rules that must be consistently and faithfully applied unless the particular rule at issue is changed. See also *Price*, 493 Mich at 260 ("[W]hen it comes to alteration of the common law, the traditional rule must prevail absent compelling reasons for change. This approach ensures continuity and stability in the law."). Perhaps the greatest virtue of our common law is that it governs in a consistent and predictable manner countless numbers of ordinary social interactions that arise each day, sparing from the burdens of trial and the risks of financial liability citizens who have acted in a

a reasonable and responsible and customary manner. Accordingly, I would reverse the Court of Appeals judgment and reinstate the trial court's grant of summary disposition in favor of defendants.

ZAHRA, J., joins the statement of MARKMAN, J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 20, 2020



Clerk

a0317